## GEOPHYSICAL PERMIT WITH OPTION
### TO ENTER INTO AN OIL AND GAS LEASE

STATE OF LOUISIANA

PARISH OF CALCASIEU

THIS AGREEMENT made and entered into as of 5ᵗʰ day of August, 2002, (the "effective date") by and between **Excalibur Land Company, Inc., Farmers Rice Milling Company, Inc., Agrilectric Research Company and Nanette Noland ("The Powell Group")** (hereinafter called "Grantor"), whose address is 8641 United Plaza Boulevard, Suite 300, Baton Rouge, Louisiana 70809, and **Mayne & Mertz, Inc.** (hereinafter called "Grantee"), whose address is 24 Greenway Plaza, Suite 605, Houston, Texas 77046.

### WITNESSETH:

1. For and in consideration of the sum of **Ten and No/100ths Dollars cash and Other Valuable Consideration ($10.00 & OVC)**, and the agreements herein contained, but subject to the terms and conditions hereinafter set forth, Grantor hereby grants unto Grantee for the payment of Sixty Dollars ($60.00) per net acre the exclusive option for a period of Eighteen (18) Months from the effective date hereof (hereinafter called "Option Period"), to acquire oil and gas lease or leases. Mayne & Mertz, Inc. shall have the right to pay to Grantor, on or before the end of said 18 month initial term, an additional $40.00 per net acre for all or any portion of such acreage as to which Mayne & Mertz, Inc. elects to extend the term of this agreement for an additional six (6) months. This agreement covers all of Grantor's right, title and interest (as now owned or as may subsequently become owned) in and to all or a portion of that certain property situated in Calcasieu Parish, Louisiana, which is more particularly described in as follows:

### EXCALIBUR LAND COMPANY, INC.

**Township 9 South, Range 7 West, Section 25 (111 acres)** – South Half (S/2) South of Southern Pacific Railroad and North of Hwy. 90 less the East 141 acres in that portion of the South Half (S/2) of Section 25, Township 9 South, Range 7 West, South of the Southern Pacific Railroad and North of U.S. Hwy 90.

**Township 9 South, Range 7 West, Section 26 (234 acres)** – South Half (S/2) South of Southern Pacific Railroad and North of Hwy. 90.

**Township 9 South, Range 7 West, Section 27 (120 acres - 60 net acres)** – ½ interest in S/2 of SW/4 and SW/4 of SE/4.

**Township 9 South, Range 7 West, Section 32 (360 acres)** – Northeast Quarter (NE/4) and the North Half of the Southeast Quarter (N/2 SE/4) and the Southwest Quarter of the Southeast Quarter (SW/4 SE/4) and the East Half of the Southwest Quarter (E/2 SW/4),

> LESS AND EXCEPT that lot or parcel of land situated in Calcasieu Parish, Louisiana, commencing 2,841.6 feet East, 40 feet South of the Northwest corner of Section 32, Township 9 South, Range 7 West, thence South 100 feet, thence East 75 feet, thence North 100 feet, thence West 75 feet to point of commencement; as more fully shown by blueprint or plat of survey of September 10, 1945 by E.L. Gorham, Civil Engineer, attached to Act recorded in Conveyance Book 396 at page 249, under Entry No. 337333, records of Calcasieu Parish, Louisiana.

**Township 9 South, Range 7 West, Section 33 (480 acres)** – North Three-fourths (N 3/4),


DEFENDANT'S
EXHIBIT

1

LESS AND EXCEPT Lot 18 and the East Half of Lot 17 of Block 1 of Micelle Subdivision in the Northeast part of Section 33, Township 9 South, Range 7 West, conveyed by Jam Realty Company, Inc. to Emile G. Dietrich by Deed dated August 31, 1954 recorded in Conveyance Book 567 at page 512, under Entry No. 593736, records of Calcasieu Parish, Louisiana.

Township 9 South, Range 7 West, Section 34 (490 acres) – Northeast Quarter (NE/4) and the South Half (S/2) and ten (10) acres in Southeast Quarter of the Northwest Quarter (SE/4 NW/4) being that part of the Southeast Quarter of the Northwest Quarter (SE/4 of NW/4) lying East of the West line of the Farmers Canal Right of Way.

Township 9 South, Range 7 West, Section 35 (640 acres) – Entire Section 35.

Township 9 South, Range 7 West, Section 36 (635.03 acres) – Entire Section 36,

LESS AND EXCEPT that tract described as commencing at a point 40 feet South of Northeast Corner of Section 36, Township 9 South, Range 7 West, Calcasieu Parish, Louisiana, thence South along the East line of said Section 36 a distance of 345 feet; thence West along a line being parallel with the North line of said Section 36 a distance of 627 feet; thence North 345 feet to a point being 40 feet South of the North line of said Section 36; thence East a distance of 627 feet to the Point of Commencement. Said tract containing 4.97 acres, more or less sold to Warren Simien and Neotha Nelson Simien April 21, 1989 in Cash Sale Deed recorded in Conveyance Book 2143 at page 300 under File Number 2030410, records of Calcasieu Parish, Louisiana.

Township 10 South, Range 6 West, Section 7 (599 acres) – Entire Section, less Northeast Quarter of the Southeast Quarter (NE/4 SE/4) and

LESS AND EXCEPT 1 acre in a square in the Southeast corner of the Southeast Quarter of the Southeast Quarter (SE/4 SE/4) being sold to the Calcasieu Parish School Board before 1917.

LESS AND EXCEPT that portion of the Northwest Quarter of the Southeast Quarter (NW/4 of SE/4) north of the Farmers Canal containing approximately 2.19 acres.

Township 10 South, Range 6 West, Section 19 (309.5 acres) - The South 309.5 acres

Township 10 South, Range 7 West, Section 1 (160 acres) – The Northwest Quarter (NW/4) of Section 1.

Township 10 South, Range 7 West, Section 2 (160 acres) – The Northwest Quarter (NW/4) of Section 2.

Township 10 South, Range 7 West, Section 3 (120 acres) – The Southeast Quarter of the Southwest Quarter (SE/4 of SW/4), and the West Half of the Southwest Quarter (W/2 of SW/4).

Township 10 South, Range 7 West, Section 4 (296 acres) – Southwest Quarter (SW/4) and all of Northwest Quarter (NW/4) lying West of East line of the Farmers Canal,

LESS AND EXCEPT that tract of land commencing at the Northwest corner of Section 4, Township 10 South, Range 7 West, Calcasieu Parish, Louisiana, thence South 417.4 feet along the West line of Section 4; thence East 208.7 feet parallel with the North line of Section 4; thence North 417.4 feet parallel with the West line of Section 4, to the North line of Section 4; thence West 208.7 feet along the North line of Section 4 to the point of commencement, containing 2 acres being conveyed to Harold Edward Iles, Sr., November 3, 1989, recorded in Conveyance Book 2159 at page 135, records of Calcasieu Parish, Louisiana.

Township 10 South, Range 7 West, Section 9 (451 acres) – Entire Section North of Missouri Railroad,

LESS AND EXCEPT that tract beginning at a point 2,896 feet South; thence South 78 degrees 32 minutes East, 7,634 feet from Northwest corner of Section 9, Township 10 South, Range 7 West; said point being 168 feet from the center of the Missouri Pacific Railroad and 60 feet East of the Southeast corner of Block 2 of Manchester; then due North, 7 degrees 30 minutes 913 feet; then due East 852 feet; then due South 1,143.5 feet to point 105 feet from the center of the Missouri Pacific Railroad; then North 78 degrees and 32 minutes West parallel to and 105 feet from the centerline of railroad, 180 feet; thence North 68 degrees 15 minutes West; 350 feet to point 168 feet from the center of railroad; then North 78 degrees 32 minutes East, 350 feet to point of beginning. Also a tract beginning at a point on the North side of the public road 270 feet Easterly from the Southwest corner of the above described 20 acres thence Southerly 54 feet thence Easterly 270 feet, more or less to a point, thence Northwesterly 270 feet to the point of commencement, being sold to Ceasar E. Guidry, by deed dated December 22, 1927, recorded in Conveyance Book 234 at page 381, under Entry No. 114725, records of Calcasieu Parish, Louisiana.

LESS AND EXCEPT that certain tract or parcel of land described as commencing at an existing nail marking the intersection of the centerline of the Missouri Pacific Railroad and the West line of Section 9, Township 10 South, Range 7 West, Calcasieu Parish, Louisiana, said point being 2,189.96 feet North of the Southwest corner of said Section 9; thence from said point of commencement go North on and along said West line for a distance 396.10 feet, to the point of beginning and Southwest corner of herein described tract; thence continue North on and along said West line for a distance of 208.71 feet; the Northwest corner of herein described tract; thence East perpendicular to the said West line for a distance of 243.71 feet to a set one-half inch crimp pipe, the Northeast corner of herein described tract; thence South, parallel with the said West line for a distance of 208.71 feet to a set one-half inch crimp pipe, the Southwest corner of herein described tract, thence West, perpendicular to the said West line a distance of 243.71 feet to the point of beginning being conveyed to Ward Eight Fire Protection District No. 2 of Calcasieu Parish, Louisiana, December 5, 1986 recorded in Conveyance Book 1975 at page 589, records of Calcasieu Parish, Louisiana; and

All of East Half (E/2) lying East of West line of Farmers Canal,

Township 10 South, Range 7 West, Section 10 (499 acres) – All of the East Half (E/2) South and West of North and East line of Farmers Canal to Metzger Road and the West Half (W/2) of Section 10.

Township 10 South, Range 7 West, Section 11 (80 acres) – Canal running East & West through center of Section 11 and the West Half of the Southwest Quarter (W/2 SW/4).

Township 10 South, Range 7 West, Section 12 (291 acres) – All of Northeast Quarter (NE/4) lying South of Farmers Canal and all of West Half (W/2) lying South of Farmers Canal to Missouri Pacific Railroad.

Township 10 South, Range 7 West, Section 13 (640 acres) – Entire Section 13.

Township 10 South, Range 7 West, Section 14 (640 acres) – Entire Section 14.

Township 10 South, Range 7 West, Section 15 (394 acres) - South Half (S/2) of Section 15,

LESS AND EXCEPT that certain tract of land described as commencing at a point 100 feet East and 16 feet North of the Southwest corner of the Southeast Quarter (SE/4) of Section 15, Township 10 South, Range 7 West, Calcasieu

Parish, Louisiana, thence North 0 degrees 49 minutes 48 seconds East parallel with the West line of said Southeast Quarter (SE/4) for a distance of 1,559 feet; thence South 89 degrees 6 minutes 22 seconds East parallel with the South line of said Southeast Quarter (SE/4) for a distance of 2,510.8 feet to a point 37 feet West of the East line of said Southeast Quarter (SE/4); thence South 0 degrees 51 minutes 38 seconds West, parallel with said East line of the Southeast Quarter for a distance 1,559 feet to a point 16 feet North of the South line of said Southeast Quarter (SE/4); thence North 89 degrees 6 minutes 22 seconds West parallel with said South line of the Southeast Quarter (SE/4) for a distance of 2,510 feet to the point of commencement. Containing 89.9 acres more or less, being sold to Farmers Rice Milling Company, May 25, 1993 recorded in Conveyance Book 2361 at page 540, records of Calcasieu Parish, Louisiana; and

The Northwest Quarter (NW/4) of Section 15,

LESS AND EXCEPT that certain tract of land described as commencing at a point 56 feet North of the Southeast corner of the Northwest Quarter (NW/4) of Section 15, Township 10 South, Range 7 West, Calcasieu Parish, Louisiana; thence North 89 degrees 3 minutes 43 seconds West parallel with the South line of said Northwest Quarter (NW/4) for a distance of 1,025 feet; thence North 0 degrees 49 minutes 48 seconds East parallel with the East line of said Northwest Quarter (NW/4) for a distance of 1,105 feet; thence South 89 degrees 3 minutes 43 seconds East parallel with the South line of said Northwest Quarter (NW/4) for a distance of 1,025 feet to the East line of said Northwest Quarter (NW/4); thence South 0 degrees 49 minutes 48 seconds West along said East line of the Northwest Quarter (NW/4) for a distance of 1,105 feet to the point of commencement, containing 26 acres more or less, being sold to Farmers Rice Milling Company, May 25, 1993, recorded in Conveyance Book 2361 at page 540, records of Calcasieu Parish, Louisiana.

Township 10 South, Range 7 West, Section 16 (61 acres) – Southeast Quarter (SE/4) South and East of Farmers Canal and the Northeast Corner of Northeast Quarter of the Northeast Quarter (NE/4 NE/4) North and East of Farmers Canal,

Township 10 South, Range 7 West, Section 21 (634 acres) – Entire Section,

LESS AND EXCEPT 1 acre described as beginning at a one and one-eighths inch pipe set in the West right of way line of a 60 foot road, being North 370.5 feet and West 30 feet from the Southeast corner of Section 21, thence West 290.4 feet to an iron pipe for a corner, thence North 150 feet to an iron pipe for corner, thence East 290.4 feet to an iron pipe set in the West right of way line of a 60 foot road, thence South along the West right of way line of said road 150 feet to the place of beginning and containing 1 acre of land sold to Cyril Leger, March 27, 1963 recorded in Conveyance Book 849 at page 79, records of Calcasieu Parish, Louisiana.

LESS AND EXCEPT the property described as commencing at a point in the South line of Section 21, Township 10 South, Range 7 West Calcasieu Parish, Louisiana, said point being North 89 degrees 58 minutes West, 395 feet from the Southeast corner of said Section 21, thence North 89 degrees 58 minutes West, 150 feet along the South line of said Section 21, thence North 0 degrees 2 minutes East 150 feet, thence South 89 degrees 58 minutes East 150 feet, thence South 0 degrees 2 minutes West, 150 feet to the point of commencement being sold to Jefferson Davis Electric Coop, July 24, 1967, recorded in Conveyance Book 997 at page 333, records of Calcasieu Parish, Louisiana.

LESS AND EXCEPT that tract of land described as commencing at a point in the South line of Section 21; Township 7 South, Range 7 West, Calcasieu Parish, Louisiana, said point being North 89 degrees 58 minutes West, 545 feet from the Southeast corner of said Section 21, thence North 0 degrees 2 minutes East, 150

feet, thence South 11 degrees 9 minutes 30 seconds West, 122.4 feet, thence South 0 degrees 2 minutes West, 30 feet to the South line of said Section 21, thence South 89 degrees 58 minutes East, 23.6 feet to the point of commencement, sold to Jefferson Davis Electric Coop, June 30, 1969, recorded in Conveyance Book 1085 at page 125, records of Calcasieu Parish, Louisiana.

LESS AND EXCEPT that tract of land described as commencing at a point 30 feet West and 30 feet North of the Southeast corner of Section 21, Township 10 South, Range 7 West, Calcasieu Parish, Louisiana, thence West a distance of 368.5 feet to a point 0.3 feet East of an existing chain link fence corner, thence North and parallel to existing chain link fence a distance of 116.83 feet, thence West parallel to chain link fence a distance of 146.75 feet, thence in a Northeasterly direction along an existing fence a distance of 379 feet, thence East a distance of 149.8 feet to a point 0.3 feet West of an existing fence, thence South parallel to the existing fence a distance of 150 feet, thence East paralleling the existing fence a distance of 290.3 feet, distance South parallel to an existing fence a distance to 338.45 feet, to the point of commencement, sold to Cyril Leger January 24, 1974 recorded in Conveyance Book 1262 at page 746, records of Calcasieu Parish, Louisiana.

Township 10 South, Range 7 West, Section 22 (634.2 acres) – Entire Section,

LESS AND EXCEPT: That certain tract or parcel of land, together with all improvements thereon and appurtenances thereto belonging, described as commencing at a point on the East line of Section 22, Township 10 South, Range 7 West, Calcasieu Parish, Louisiana; said point being 1,334.20 feet North 0 degrees 25 minutes West of the Southeast corner of said Section 22, thence South 42 degrees 27 minutes 40 seconds West, a distance of 328.30 feet; thence North 50 degrees 4 minutes 0 seconds West, a distance of 560.7 feet; thence North 50 degrees 4 minutes 0 seconds West, a distance of 560.7 feet; thence North 39 degrees 59 East, a distance of 435 feet; thence South 51 degrees 30 minutes 20 seconds East, a distance of 475.31 feet to the East line of said Section 22; thence continue South 51 degrees 30 minutes 20 seconds East into Section 23, Township 10 South, Range 7 West, a distance of 104.69 feet; thence South 42 degrees 27 minutes 40 seconds West, a distance of 121.7 feet to the point of commencement; together with the 50 foot right of way easement for ingress and egress to the Easterly side of the property from Martone Road all as more fully shown by plat of survey attached to the deed, made by Vernon F. Meyer, Louisiana Registration No. 2663, dated February 7, 1975, containing 5.88 acres more or less, being sold to Rodney Zaumbrecher on February 17, 1975 recorded in Conveyance Book 1300 page 10 1, records of Calcasieu Parish, Louisiana.

Township 10 South, Range 7 West, Section 23 (490 acres) – Entire Section North and West of Farmers Canal and a tract commencing 1624' North of Southeast (SE) Corner; thence West 1575' to Canal Right of Way; thence Northeasterly along Canal Right of Way to East line of Section; thence South to Point of Commencement,

LESS AND EXCEPT the South 194.43 acres described as commencing at the Southeast corner of Section 23, Township 10 South, Range 7 West, proceed North 89 degrees 7 minutes 47 seconds West along the Southern boundary of the Section 5,290.3 feet, thence North 1,041.19 feet, thence North 41 degrees 29 minutes 21 seconds East, 583.16 feet, thence North 76 degrees 0 minutes 04 seconds East, 1,236.79 feet, thence South 78 degrees 25 minutes 0 seconds East, 1,592.71 feet, thence North 79 degrees 9 minutes 35 seconds East, 458.17 feet, thence East 1,702.65 feet, thence South along the Eastern boundary of the Section line, 1,624 feet to the point of beginning, all as shown on the plat of survey prepared by R.L. Capell, Jr., attached to the boundary agreement executed July 11, 1968, recorded in Conveyance Book 1046 at page 81 under Entry No. 1109199, records of Calcasieu Parish, Louisiana.

Township 10 South, Range 7 West, Section 25 (233 acres) − The Northeast Quarter of the Southwest Quarter (NE/4 of SW/4), and the South 105 acres of Southeast Quarter (SE/4), and South Half of Southwest Quarter (S/2 of SW/4),

LESS AND EXCEPT the North 262.5 feet of the Southwest Quarter of the Southwest Quarter (SW/4 of SW/4).

Township 10 South, Range 7 West, Section 26 (160 acres) − Southwest Quarter (SW/4) of Section 26.

Being a total of 9,861.65 net acres, more or less.

## FARMERS RICE MILLING COMPANY, INC.

Township 10 South, Range 7 West, Section 7 (115 acres) − 115 acres lying in the NW/4.

Township 10 South, Range 8 West, Section 12 (4 acres) - ±4 acres in E/2 SE/4 SE/4.

Township 10 South, Range 7 West, Section 15 (119 acres) − That certain tract of land described as commencing at a point 100 feet East and 16 feet North of the Southwest corner of the Southeast Quarter (SE/4) of Section 15, Township 10 South, Range 7 West, Calcasieu Parish, Louisiana, thence North 0 degrees 49 minutes 48 seconds East parallel with the West line of said Southeast Quarter (SE/4) for a distance of 1,559 feet; thence South 89 degrees 6 minutes 22 seconds East parallel with the South line of said Southeast Quarter (SE/4) for a distance of 2,510.8 feet to a point 37 feet West of the East line of said Southeast Quarter (SE/4); thence South 0 degrees 51 minutes 38 seconds West, parallel with said East line of the Southeast Quarter for a distance 1,559 feet to a point 16 feet North of the South line of said Southeast Quarter (SE/4); thence North 89 degrees 6 minutes 22 seconds West parallel with said South line of the Southeast Quarter (SE/4) for a distance of 2,510 feet to the point of commencement. Containing 92 acres more or less, being sold to Farmers Rice Milling Company, May 25, 1993 recorded in Conveyance Book 2361 at page 540, records of Calcasieu Parish, Louisiana; and

That certain tract of land described as commencing at a point 56 feet North of the Southeast corner of the Northwest Quarter (NW/4) of Section 15, Township 10 South, Range 7 West, Calcasieu Parish, Louisiana; thence North 89 degrees 3 minutes 43 seconds West parallel with the South line of said Northwest Quarter (NW/4) for a distance of 1,025 feet; thence North 0 degrees 49 minutes 48 seconds East parallel with the East line of said Northwest Quarter (NW/4) for a distance of 1,105 feet; thence South 89 degrees 3 minutes 43 seconds East parallel with the South line of said Northwest Quarter (NW/4) for a distance of 1,025 feet to the East line of said Northwest Quarter (NW/4); thence South 0 degrees 49 minutes 48 seconds West along said East line of the Northwest Quarter (NW/4) for a distance of 1,105 feet to the point of commencement, containing 27 acres more or less, being sold to Farmers Rice Milling Company, May 25, 1993, recorded in Conveyance Book 2361 at page 540, records of Calcasieu Parish, Louisiana.)

Being a total of 238 net acres, more or less.

## AGRILECTRIC RESEARCH COMPANY

Township 10 South, Range 7 West, Section 7 (43.85 acres) − 43.85 acres lying in the NW/4.

Being a total of 43.85 acres, more or less.

NANETTE NOLAND

CALCASIEU PARISH

Township 9 South, Range 7 West, Section 27 (120 acres - 30 net acres) – ¼ interest in S/2 of SW/4 and SW/4 of SE/4.

Being a total of 30 net acres, more or less.

It is the intention of the parties hereto that this agreement covers the interest of surface and/or minerals of all entities represented by The Powell Group, its affiliates, subsidiaries, principals, etc. lying within the area outlined on the attached plat.

Together with the exclusive right, during said Option Period, to conduct a geophysical exploration survey on said property for the purpose of exploring same for the possible existence of oil, gas and other hydrocarbons, including Grantor giving Grantee, or its duly contracted seismic agent, all rights and permits necessary to conduct geophysical operations across said property, including access to and use of any roads, rights-of-way, canals, etc., relevant to said operations. It is expressly agreed that this agreement shall immediately attach to and effect any and all rights, titles and interests in the above described lands, including reversionary mineral rights hereinafter acquired by or inuring to Grantor and/or Grantor's successors and assigns. Such permit is more particularly described in "Louisiana Seismograph Permit" marked Exhibit "A" and attached hereto. To the extent that there may be a conflict between the terms hereof and Exhibit "A", the provisions of Exhibit "A" will control.

2. Any lease or leases to be acquired by Grantee hereunder shall be in identical form and substance as the lease form attached hereto as Exhibit "B", providing for a Two (2) Year term, Two Hundred Fifty and No/100 ($250.00) Dollars per net mineral acre bonus, Two Hundred Fifty and No/100 ($250.00) Dollars per net mineral acre delay rentals, and 25% royalty. To the extent that there may be a conflict between the terms hereof and Exhibit "B", the provisions of Exhibit "B" will control.

3. In the event Grantee should from time to time desire to exercise the option herein granted, Grantee shall, prior to the expiration or termination of the Option Period, notify Grantor in writing thereof, enclosing its check, payable to Grantor, in the amount specified in Paragraph 2 above which is the total bonus payment under such lease.

4. Promptly after receipt of the aforesaid notice and check, Grantor will execute and deliver to Grantee two originals of the Oil and Gas Lease attached hereto as Exhibit "B", which shall be dated as of the date of the aforesaid notice by Grantee.

5. Deleted

6. Grantor expressly reserves the full enjoyment and use of property covered hereby and all rights with respect to the surface and sub-surface thereof for any and all purposes except those granted and to the extent granted to the Grantee. All of the rights retained by Grantor and the rights granted to Grantee herein shall be exercised in such a manner that neither shall unduly interfere with the operations of the other upon the property covered hereby.

7. Except to the extent that Grantee may have theretofore exercised its option hereunder, the rights and options of Grantee herein shall terminate at the end of the Option Period, without notice, demand or putting in default, and Grantee shall promptly, within a reasonable time period, execute and deliver to Grantor a recordable release hereof.

8.  This contract and option is made and entered into without any warranty by or recourse upon Grantor whatsoever, not even for the return of the consideration above recited, and this contract, and all of the terms and provisions and conditions hereof, shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns.

9.  Deleted

IN WITNESS WHEREOF, the parties hereto have executed this instrument in multiple original counterparts, as of the day and date hereinabove first written.

Witnesses:

EXCALIBUR LAND COMPANY, INC.
(Grantor)

By:

Witnesses:

FARMERS RICE MILLING COMPANY, INC.
(Grantor)

By:

Witnesses:

AGRILECTRIC RESEARCH COMPANY
(Grantor)

By:

Witnesses:

NANETTE NOLAND
(Grantor)

By:

Witnesses:

MAYNE & MERTZ, INC.
(Grantee)

By: 
Dennis F. Sharp, Attorney-in-Fact

Case 6:06-cv-00800-RFD-MEM Document 75-3 Filed 08/06/07 Page 9 of 27 PageID #: 686

Attached to the certain Geophysical Permit With Option To Enter Into An Oil And Gas Lease
by and between Excalibur Land Company, Inc., et al, as Grantor, and Mayne & Mertz, Inc. as Grantee.

## LOUISIANA SEISMOGRAPH PERMIT

**PERMIT DATE:** August 5, 2002

Under the terms and conditions hereinafter set forth, and for a consideration of Ten and No/100ths Dollars cash and Other Valuable Consideration ($10.00 & OVC) received, **Excalibur Land Company, Inc., Farmers Rice Milling Company, Inc., Agrilectric Research Company and Nanette Noland ("The Powell Group")** (hereinafter referred to as "**GRANTOR**"), whose address is 8641 United Plaza Boulevard, Suite 300, Baton Rouge, Louisiana 70809, Phone Number 225-922-4540, hereby grants unto **Mayne & Mertz, Inc.** (hereinafter referred to as "**GRANTEE**"), whose address is 24 Greenway Plaza, Suite 605, Houston, Texas 77046, Phone Number 713-963-0031, and Fax Number 713-626-5563, a permit to go upon the land or lands owned by Grantor ("said lands") and which are particularly described as follows:

### EXCALIBUR LAND COMPANY, INC.

**Township 9 South, Range 7 West, Section 25 (111 acres)** – South Half (S/2) South of Southern Pacific Railroad and North of Hwy. 90 less the East 141 acres in that portion of the South Half (S/2) of Section 25, Township 9 South, Range 7 West, South of the Southern Pacific Railroad and North of U.S. Hwy 90.

**Township 9 South, Range 7 West, Section 26 (234 acres)** – South Half (S/2) South of Southern Pacific Railroad and North of Hwy. 90

**Township 9 South, Range 7 West, Section 27 (120 acres - 60 net acres)** – ½ interest in S/2 of SW/4 and SW/4 of SE/4.

**Township 9 South, Range 7 West, Section 32 (360 acres)** – Northeast Quarter (NE/4) and the North Half of the Southeast Quarter (N/2 SE/4) and the Southwest Quarter of the Southeast Quarter (SW/4 SE/4) and the East Half of the Southwest Quarter (E/2 SW/4),

LESS AND EXCEPT that lot or parcel of land situated in Calcasieu Parish, Louisiana, commencing 2,841.6 feet East, 40 feet South of the Northwest corner of Section 32, Township 9 South, Range 7 West, thence South 100 feet, thence East 75 feet, thence North 100 feet, thence West 75 feet to point of commencement; as more fully shown by blueprint or plat of survey of September 10, 1945 by E.L. Gorham, Civil Engineer, attached to Act recorded in Conveyance Book 396 at page 249, under Entry No. 337333, records of Calcasieu Parish, Louisiana.

**Township 9 South, Range 7 West, Section 33 (480 acres)** – North Three-fourths (N 3/4),

LESS AND EXCEPT Lot 18 and the East Half of Lot 17 of Block 1 of Micelle Subdivision in the Northeast part of Section 33, Township 9 South, Range 7 West, conveyed by Jam Realty Company, Inc. to Emile G. Dietrich by Deed dated August 31, 1954 recorded in Conveyance Book 567 at page 512, under Entry No. 593736, records of Calcasieu Parish, Louisiana.

**Township 9 South, Range 7 West, Section 34 (490 acres)** – Northeast Quarter (NE/4) and the South Half (S/2) and ten (10) acres in Southeast Quarter of the Northwest Quarter (SE/4 NW/4) being that part of the Southeast Quarter of the Northwest Quarter (SE/4 of NW/4) lying East of the West line of the Farmers Canal Right of Way.

**Township 9 South, Range 7 West, Section 35 (640 acres)** – Entire Section 35.

DEFENDANT'S
EXHIBIT
2

1

Township 9 South, Range 7 West, Section 36 (635.03 acres) – Entire Section 36,

LESS AND EXCEPT that tract described as commencing at a point 40 feet South of Northeast Corner of Section 36, Township 9 South, Range 7 West, Calcasieu Parish, Louisiana, thence South along the East line of said Section 36 a distance of 345 feet; thence West along a line being parallel with the North line of said Section 36 a distance of 627 feet; thence North 345 feet to a point being 40 feet South of the North line of said Section 36; thence East a distance of 627 feet to the Point of Commencement. Said tract containing 4.97 acres, more or less sold to Warren Simien and Neotha Nelson Simien April 21, 1989 in Cash Sale Deed recorded in Conveyance Book 2143 at page 300 under File Number 2030410, records of Calcasieu Parish, Louisiana.

Township 10 South, Range 6 West, Section 7 (599 acres) – Entire Section, less Northeast Quarter of the Southeast Quarter (NE/4 SE/4) and

LESS AND EXCEPT 1 acre in a square in the Southeast corner of the Southeast Quarter of the Southeast Quarter (SE/4 SE/4) being sold to the Calcasieu Parish School Board before 1917.

LESS AND EXCEPT that portion of the Northwest Quarter of the Southeast Quarter (NW/4 of SE/4) north of the Farmers Canal containing approximately 2.19 acres.

Township 10 South, Range 6 West, Section 19 (309.5 acres) - The South 309.5 acres

Township 10 South, Range 7 West, Section 1 (160 acres) – The Northwest Quarter (NW/4) of Section 1.

Township 10 South, Range 7 West, Section 2 (160 acres) – The Northwest Quarter (NW/4) of Section 2.

Township 10 South, Range 7 West, Section 3 (120 acres) – The Southeast Quarter of the Southwest Quarter (SE/4 of SW/4), and the West Half of the Southwest Quarter (W/2 of SW/4).

Township 10 South, Range 7 West, Section 4 (296 acres) – Southwest Quarter (SW/4) and all of Northwest Quarter (NW/4) lying West of East line of the Farmers Canal,

LESS AND EXCEPT that tract of land commencing at the Northwest corner of Section 4, Township 10 South, Range 7 West, Calcasieu Parish, Louisiana, thence South 417.4 feet along the West line of Section 4; thence East 208.7 feet parallel with the North line of Section 4; thence North 417.4 feet parallel with the West line of Section 4, to the North line of Section 4; thence West 208.7 feet along the North line of Section 4 to the point of commencement, containing 2 acres being conveyed to Harold Edward Iles, Sr., November 3, 1989, recorded in Conveyance Book 2159 at page 135, records of Calcasieu Parish, Louisiana.

Township 10 South, Range 7 West, Section 9 (451 acres) – Entire Section North of Missouri Railroad,

LESS AND EXCEPT that tract beginning at a point 2,896 feet South; thence South 78 degrees 32 minutes East, 7,634 feet from Northwest corner of Section 9, Township 10 South, Range 7 West; said point being 168 feet from the center of the Missouri Pacific Railroad and 60 feet East of the Southeast corner of Block 2 of Manchester; then due North, 7 degrees 30 minutes 913 feet; then due East 852 feet; then due South 1,143.5 feet to point 105 feet from the center of the Missouri Pacific Railroad; then North 78 degrees and 32 minutes West parallel to and 105 feet from the centerline of railroad, 180 feet; thence North 68 degrees 15 minutes West; 350 feet to point 168 feet from the center of railroad; then North 78 degrees 32 minutes East, 350 feet to point of beginning. Also a tract beginning at a point on the North side of the public road 270 feet Easterly from the Southwest corner of the above described 20 acres thence Southerly 54 feet thence

2

Easterly 270 feet, more or less to a point, thence Northwesterly 270 feet to the point of commencement, being sold to Ceasar E. Guidry, by deed dated December 22, 1927, recorded in Conveyance Book 234 at page 381, under Entry No. 114725, records of Calcasieu Parish, Louisiana.

LESS AND EXCEPT that certain tract or parcel of land described as commencing at an existing nail marking the intersection of the centerline of the Missouri Pacific Railroad and the West line of Section 9, Township 10 South, Range 7 West, Calcasieu Parish, Louisiana, said point being 2,189.96 feet North of the Southwest corner of said Section 9; thence from said point of commencement go North on and along said West line for a distance 396.10 feet, to the point of beginning and Southwest corner of herein described tract; thence continue North on and along said West line for a distance of 208.71 feet; the Northwest corner of herein described tract; thence East perpendicular to the said West line for a distance of 243.71 feet to a set one-half inch crimp pipe, the Northeast corner of herein described tract; thence South, parallel with the said West line for a distance of 208.71 feet to a set one-half inch crimp pipe, the Southwest corner of herein described tract, thence West, perpendicular to the said West line a distance of 243.71 feet to the point of beginning being conveyed to Ward Eight Fire Protection District No. 2 of Calcasieu Parish, Louisiana, December 5, 1986 recorded in Conveyance Book 1975 at page 589, records of Calcasieu Parish, Louisiana; and

All of East Half (E/2) lying East of West line of Farmers Canal,

Township 10 South, Range 7 West, Section 10 (499 acres) – All of the East Half (E/2) South and West of North and East line of Farmers Canal to Metzger Road and the West Half (W/2) of Section 10.

Township 10 South, Range 7 West, Section 11 (80 acres) – Canal running East & West through center of Section 11 and the West Half of the Southwest Quarter (W/2 SW/4).

Township 10 South, Range 7 West, Section 12 (291 acres) – All of Northeast Quarter (NE/4) lying South of Farmers Canal and all of West Half (W/2) lying South of Farmers Canal to Missouri Pacific Railroad.

Township 10 South, Range 7 West, Section 13 (640 acres) – Entire Section 13.

Township 10 South, Range 7 West, Section 14 (640 acres) – Entire Section 14.

Township 10 South, Range 7 West, Section 15 (394 acres) – South Half (S/2) of Section 15,

LESS AND EXCEPT that certain tract of land described as commencing at a point 100 feet East and 16 feet North of the Southwest corner of the Southeast Quarter (SE/4) of Section 15, Township 10 South, Range 7 West, Calcasieu Parish, Louisiana, thence North 0 degrees 49 minutes 48 seconds East parallel with the West line of said Southeast Quarter (SE/4) for a distance of 1,559 feet; thence South 89 degrees 6 minutes 22 seconds East parallel with the South line of said Southeast Quarter (SE/4) for a distance of 2,510.8 feet to a point 37 feet West of the East line of said Southeast Quarter (SE/4); thence South 0 degrees 51 minutes 38 seconds West, parallel with said East line of the Southeast Quarter for a distance 1,559 feet to a point 16 feet North of the South line of said Southeast Quarter (SE/4); thence North 89 degrees 6 minutes 22 seconds West parallel with said South line of the Southeast Quarter (SE/4) for a distance of 2,510 feet to the point of commencement. Containing 89.9 acres more or less, being sold to Farmers Rice Milling Company, May 25, 1993 recorded in Conveyance Book 2361 at page 540, records of Calcasieu Parish, Louisiana; and

The Northwest Quarter (NW/4) of Section 15,

LESS AND EXCEPT that certain tract of land described as commencing at a point 56 feet North of the Southeast corner of the Northwest Quarter (NW/4) of Section 15,

3

Township 10 South, Range 7 West, Calcasieu Parish, Louisiana; thence North 89 degrees 3 minutes 43 seconds West parallel with the South line of said Northwest Quarter (NW/4) for a distance of 1,025 feet; thence North 0 degrees 49 minutes 48 seconds East parallel with the East line of said Northwest Quarter (NW/4) for a distance of 1,105 feet; thence South 89 degrees 3 minutes 43 seconds East parallel with the South line of said Northwest Quarter (NW/4) for a distance of 1,025 feet to the East line of said Northwest Quarter (NW/4); thence South 0 degrees 49 minutes 48 seconds West along said East line of the Northwest Quarter (NW/4) for a distance of 1,105 feet to the point of commencement, containing 26 acres more or less, being sold to Farmers Rice Milling Company, May 25, 1993, recorded in Conveyance Book 2361 at page 540, records of Calcasieu Parish, Louisiana.

Township 10 South, Range 7 West, Section 16 (61 acres) – Southeast Quarter (SE/4) South and East of Farmers Canal and the Northeast Corner of Northeast Quarter of the Northeast Quarter (NE/4 NE/4) North and East of Farmers Canal,

Township 10 South, Range 7 West, Section 21 (634 acres) – Entire Section,

LESS AND EXCEPT 1 acre described as beginning at a one and one-eighths inch pipe set in the West right of way line of a 60 foot road, being North 370.5 feet and West 30 feet from the Southeast corner of Section 21, thence West 290.4 feet to an iron pipe for a corner, thence North 150 feet to an iron pipe for corner, thence East 290.4 feet to an iron pipe set in the West right of way line of a 60 foot road, thence South along the West right of way line of said road 150 feet to the place of beginning and containing 1 acre of land sold to Cyril Leger, March 27, 1963 recorded in Conveyance Book 849 at page 79, records of Calcasieu Parish, Louisiana.

LESS AND EXCEPT the property described as commencing at a point in the South line of Section 21, Township 10 South, Range 7 West Calcasieu Parish, Louisiana, said point being North 89 degrees 58 minutes West, 395 feet from the Southeast corner of said Section 21, thence North 89 degrees 58 minutes West, 150 feet along the South line of said Section 21, thence North 0 degrees 2 minutes East 150 feet, thence South 89 degrees 58 minutes East 150 feet, thence South 0 degrees 2 minutes West, 150 feet to the point of commencement being sold to Jefferson Davis Electric Coop, July 24, 1967, recorded in Conveyance Book 997 at page 333, records of Calcasieu Parish, Louisiana.

LESS AND EXCEPT that tract of land described as commencing at a point in the South line of Section 21, Township 7 South, Range 7 West, Calcasieu Parish, Louisiana, said point being North 89 degrees 58 minutes West, 545 feet from the Southeast corner of said Section 21, thence North 0 degrees 2 minutes East, 150 feet, thence South 11 degrees 9 minutes 30 seconds West, 122.4 feet, thence South 0 degrees 2 minutes West, 30 feet to the South line of said Section 21, thence South 89 degrees 58 minutes East, 23.6 feet to the point of commencement, sold to Jefferson Davis Electric Coop, June 30, 1969, recorded in Conveyance Book 1085 at page 125, records of Calcasieu Parish, Louisiana.

LESS AND EXCEPT that tract of land described as commencing at a point 30 feet West and 30 feet North of the Southeast corner of Section 21, Township 10 South, Range 7 West, Calcasieu Parish, Louisiana, thence West a distance of 368.5 feet to a point 0.3 feet East of an existing chain link fence corner, thence North and parallel to existing chain link fence a distance of 116.83 feet, thence West parallel to chain link fence a distance of 146.75 feet, thence in a Northeasterly direction along an existing fence a distance of 379 feet, thence East a distance of 149.8 feet to a point 0.3 feet West of an existing fence, thence South parallel to the existing fence a distance of 150 feet, thence East paralleling the existing fence a distance of 290.3 feet, distance South parallel to an existing fence a distance to 338.45 feet, to the point of commencement, sold to Cyril Leger January 24, 1974 recorded in Conveyance Book 1252 at page 746, records of Calcasieu Parish, Louisiana.

4

Township 10 South, Range 7 West, Section 22 ( 634.2 acres) – Entire Section,

> LESS AND EXCEPT: That certain tract or parcel of land, together with all improvements thereon and appurtenances thereto belonging, described as commencing at a point on the East line of Section 22, Township 10 South, Range 7 West, Calcasieu Parish, Louisiana; said point being 1,334.20 feet North 0 degrees 25 minutes West of the Southeast corner of said Section 22, thence South 42 degrees 27 minutes 40 seconds West, a distance of 328.30 feet; thence North 50 degrees 4 minutes 0 seconds West, a distance of 560.7 feet; thence North 50 degrees 4 minutes 0 seconds West, a distance of 560.7 feet; thence North 39 degrees 59 East, a distance of 435 feet; thence South 51 degrees 30 minutes 20 seconds East, a distance of 475.31 feet to the East line of said Section 22; thence continue South 51 degrees 30 minutes 20 seconds East into Section 23, Township 10 South, Range 7 West, a distance of 104.69 feet; thence South 42 degrees 27 minutes 40 seconds West, a distance of 121.7 feet to the point of commencement; together with the 50 foot right of way easement for ingress and egress to the Easterly side of the property from Martone Road all as more fully shown by plat of survey attached to the deed, made by Vernon F. Meyer, Louisiana Registration No. 2663, dated February 7, 1975, containing 5.88 acres more or less, being sold to Rodney Zaumbrecher on February 17, 1975 recorded in Conveyance Book 1300 page 10 1, records of Calcasieu Parish, Louisiana.

Township 10 South, Range 7 West, Section 23 (490 acres) – Entire Section North and West of Farmers Canal and a tract commencing 1624' North of Southeast (SE) Corner; thence West 1575' to Canal Right of Way; thence Northeasterly along Canal Right of Way to East line of Section; thence South to Point of Commencement,

> LESS AND EXCEPT the South 194.43 acres described as commencing at the Southeast corner of Section 23, Township 10 South, Range 7 West, proceed North 89 degrees 7 minutes 47 seconds West along the Southern boundary of the Section 5,290.3 feet, thence North 1,041.19 feet, thence North 41 degrees 29 minutes 21 seconds East, 583.16 feet, thence North 76 degrees 0 minutes 04 seconds East, 1,236.79 feet, thence South 78 degrees 25 minutes 0 seconds East, 1,592.71 feet, thence North 79 degrees 9 minutes 35 seconds East, 458.17 feet, thence East 1,702.65 feet, thence South along the Eastern boundary of the Section line, 1,624 feet to the point of beginning, all as shown on the plat of survey prepared by R.L. Capell, Jr., attached to the boundary agreement executed July 11, 1968, recorded in Conveyance Book 1046 at page 81 under Entry No. 1109199, records of Calcasieu Parish, Louisiana.

Township 10 South, Range 7 West, Section 25 (233 acres) – The Northeast Quarter of the Southwest Quarter (NE/4 of SW/4), and the South 105 acres of Southeast Quarter (SE/4), and South Half of Southwest Quarter (S/2 of SW/4),

> LESS AND EXCEPT the North 262.5 feet of the Southwest Quarter of the Southwest Quarter (SW/4 of SW/4).

Township 10 South, Range 7 West, Section 26 (160 acres) – Southwest Quarter (SW/4) of Section 26.

Being a total of 9,861.65 net acres, more or less.

<u>FARMERS RICE MILLING COMPANY, INC.</u>

Township 10 South, Range 7 West, Section 7 (115 acres) – 115 acres lying in the NW/4.

Township 10 South, Range 8 West, Section 12 (4 acres)  - ±4 acres in E/2 SE/4 SE/4.

Township 10 South, Range 7 West, Section 15 (119 acres) – That certain tract of land described as commencing at a point 100 feet East and 16 feet North of the Southwest corner of the Southeast Quarter (SE/4) of Section 15, Township 10 South, Range 7 West, Calcasieu Parish, Louisiana, thence North 0 degrees 49 minutes 48 seconds East parallel with the West line of said Southeast Quarter (SE/4) for a distance of 1,559 feet; thence South 89 degrees 6 minutes 22 seconds East parallel with the South line of said Southeast Quarter (SE/4) for a distance of 2,510.8 feet to a point 37 feet West of the East line of said Southeast Quarter (SE/4); thence South 0 degrees 51 minutes 38 seconds West, parallel with said East line of the Southeast Quarter for a distance 1,559 feet to a point 16 feet North of the South line of said Southeast Quarter (SE/4); thence North 89 degrees 6 minutes 22 seconds West parallel with said South line of the Southeast Quarter (SE/4) for a distance of 2,510 feet to the point of commencement. Containing 92 acres more or less, being sold to Farmers Rice Milling Company, May 25, 1993 recorded in Conveyance Book 2361 at page 540, records of Calcasieu Parish, Louisiana; and

That certain tract of land described as commencing at a point 56 feet North of the Southeast corner of the Northwest Quarter (NW/4) of Section 15, Township 10 South, Range 7 West, Calcasieu Parish, Louisiana; thence North 89 degrees 3 minutes 43 seconds West parallel with the South line of said Northwest Quarter (NW/4) for a distance of 1,025 feet; thence North 0 degrees 49 minutes 48 seconds East parallel with the East line of said Northwest Quarter (NW/4) for a distance of 1,105 feet; thence South 89 degrees 3 minutes 43 seconds East parallel with the South line of said Northwest Quarter (NW/4) for a distance of 1,025 feet to the East line of said Northwest Quarter (NW/4); thence South 0 degrees 49 minutes 48 seconds West along said East line of the Northwest Quarter (NW/4) for a distance of 1,105 feet to the point of commencement, containing 27 acres more or less, being sold to Farmers Rice Milling Company, May 25, 1993, recorded in Conveyance Book 2361 at page 540, records of Calcasieu Parish, Louisiana.)

Being a total of 238 net acres, more or less.

<u>AGRILECTRIC RESEARCH COMPANY</u>

Township 10 South, Range 7 West, Section 7 (43.85 acres) – 43.85 acres lying in the NW/4.

Being a total of 43.85 acres, more or less.

<u>NANETTE NOLAND</u>

<u>CALCASIEU PARISH</u>

Township 9 South, Range 7 West, Section 27 (120 acres - 30 net acres) – ¼ interest in S/2 of SW/4 and SW/4 of SE/4.
Being a total of 30 net acres, more or less.

It is the intention of the parties hereto that this agreement covers the interest of surface and/or minerals of all entities represented by The Powell Group, its affiliates, subsidiaries, principals, etc. lying within the area outlined on the attached plat.

6

So far as, and only in so far as the rights of Grantor are concerned, you are hereby granted a permit for a period of Eighteen (18) months from the date hereof with the option to extend permit for an additional six (6) months, to conduct seismograph operations across the above-described lands subject to the following terms and conditions, to-wit:

Section 1.    For the purpose of this permit the following terms and phrases when used herein are defined to have the following meanings:

(a)   "Hazardous Material" means any substance, pollutant, or contaminant, listed or regulated under the Comprehensive Environmental Response, Compensation and Liability Act, as amended 42 U.S.C. 9601 et seq. ("CERCLA") or the Resource Conservation and Recovery Act, 42 U.S.C. 6907 et seq. ("RCRA"); pesticides regulated under the Federal Insecticide, Fungicide and Rodenticide Act, as amended, 7 U.S.C. 136 et seq. ("FIFRA"); asbestos, PCB's, and other substances regulated under the Toxic Substances Control Act, as amended, 15 U.S.C. 2601 et seq. ("TSCA"); source material, special nuclear material, by-product materials, and any other radioactive materials or radioactive wastes, however produced, (including technologically enhanced naturally occurring radioactive materials), including but not limited to, materials regulated under the Atomic Energy Act, as amended, 42 U.S.C. 2011 et seq. or the Nuclear Waste Policy Act of 1982, as amended, 42 U.S.C. 10101 et seq.; and industrial process and pollution control wastes whether or not hazardous within the meaning of the Resource Conservation and Recovery Act, as amended, 42 U.S.C. 6901 et seq. and wastes associated with the exploration for or production of oil and gas.

(b)   "Release (of Materials)" means any actual or threatened spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, dumping, or disposing of Hazardous Materials into the environment, as "environment" is defined in CERCLA on or adjacent to the Premises.

(c)   "Environmental Law" means the Clean Air Act, 42 U.S.C. 7401 et seq.; the Clean Water Act, 33 U.S.C. 1251 et seq., and the Water Quality Act of 1987; the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"), 7 U.S.C. 136 et seq.; the Marine Protection, Research, and Sanctuaries Act, 33 U.S.C. 1401 et seq.; the National Environmental Policy Act, 42 U.S.C. 4321 et seq.; the Noise Control Act, 42 U.S.C. 4901 et seq.; the Occupational Safety and Health Act, 29 U.S.C. 651 et seq.; the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. 6901 et seq., as amended by the Hazardous and Solid Waste Amendments of 1984; the Safe Drinking Water Act, 42 U.S.C. 300f et seq.; the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. 96012 et seq., as amended by the Superfund Amendments and Reauthorization Act, the Emergency Planning and Community Right-to-Know Act, and Radon Gas and Indoor Air Quality Research Act; the Toxic Substances Control Act ("TSCA"), 15 U.S.C. 2601 et seq.; the Atomic Energy Act, 42 U.S.C. 2011 et seq., and the Nuclear Waste Policy Act of 1982, 42 U.S.C. 2011 et seq., including regulations promulgated and orders issued thereunder, all as may be amended from time to time.   Environmental Laws shall also include all state, regional, county, parish, municipal, and other local laws, regulations, and ordinances insofar as they are equivalent or similar to the federal laws recited above, purport to regulate Hazardous Materials, or impose requirements relating to environmental protection, mining operations or any other laws effecting this operation as they now exist, may be amended or enacted during the term of this agreement. Environmental Laws shall also include the laws, regulations, and orders of the Louisiana Department of Natural Resources, or any officials thereunder, pertaining to on-site cleanup and restoration, as well as the laws, regulations, and orders of the Louisiana Department of Environmental Quality.

Section 2.    Grantee shall conduct their seismic operations with all reasonable care to avoid any unnecessary damage to any of the lands specified herein or to the timber or crops

7

thereon or to the roads and improvements thereon. No shot holes shall be located on or over company roads and fire breaks (fire lines or fire lanes). Grantee agrees that it will enter said lands only from existing roads.

Section 3. Grantee expressly agrees: (i) to exercise the rights granted in this permit in a commercially reasonable manner so as to minimize disturbance of and damage to the surface of the property, (ii) to maintain in a safe and usable condition and at its sole cost and expense any roads, ditches, levees or other facilities being used or necessary, with respect to the seismic permit, and shall indemnify the Surface Owner, for any loss suffered as a result of such maintenance or failure to maintain, (iii) to indemnify, defend and hold harmless the Surface Owner from and against any and all loss, costs, claims, liabilities and expenses (including, without limitation, reasonable attorney's fees, expenses and court costs) incurred by or asserted against the Surface Owner as a result of the conduct of Grantee's activities on the property, including, without limitation, any such matters arising from Grantee's failure to comply with any and all applicable federal and state laws and regulations, (iv) reasonably compensate the Surface Owner directly for any and all surface damage, or destruction to the surface of the property or any crops, timber, fences, levees, roads or improvements located thereon caused by Grantee's activities on the property, (v) to restore the surface of the property to materially the same condition as existed prior to the commencement of activities by Grantee, and (vi) provide that all timber cut in connection with the exercise of the rights granted herein shall be the sole property of the Surface Owner and shall be cut and stacked in merchantable tree length logs.

Section 4.    Grantee shall indemnify, defend, and hold harmless the Grantor and Indemnitees from and against any and all damages, costs, losses, expenses (including, but not limited to, actual attorney's fees, engineering fees, fines, penalties, costs of investigation, costs of response actions, costs of removal actions or costs of remedial actions) arising from or attributable to Grantee's operations conducted on subject land or to any breach by Grantee of any of its warranties, representations, covenants, or obligations under this permit, not limited to but specifically including Section 11, herein.

Grantee shall pay off and discharge any and all costs and expenses or damages, that may be sustained by Grantor, and which may accrue by virtue of claims of third parties, resulting before, during or after operations, and protect and hold Grantor harmless from and against the same and to fully reimburse Grantor for all costs and expenses of every kind and character paid or incurred by it in the defense of any and all suits and claims on account of all such losses or damages.

Section 5.    Grantee will notify Grantor and Grantor's local representative, Johnny Hensgens, Excalibur Land Company, Inc., 3215 Highway 397, Lake Charles, LA 70615, IN WRITING, at least five (5) business days prior to conducting any operations or entry onto the lands listed herein. If for any reason, operations should cease for more than five (5) working days, Grantee is required to send to Grantor and Grantor's local representative, named above, a written notice within two (2) days after operations have ceased, whether due to completion or otherwise. Grantee will confer with Grantor's local representative periodically during all operations on the land or lands covered by this permit. Upon completion of this seismic work by Grantee, Grantee shall immediately notify Grantor and Grantor's representative, as named above, in order that Grantor's representative may inspect the premises to determine that Grantee has complied with all requirements hereof. Grantee shall furnish the necessary transportation, i.e. car, truck, boat, air boat, marsh buggy, helicopter, etc., at Grantee's expense for such inspection at a reasonable time agreeable to Grantor's representative.

Section 6.    Grantee shall deliver or cause to have delivered a certificate of insurance covering workmen's compensation, comprehensive general liability (limit $5,000,000) including products - completed operations and contractual liability, comprehensive auto liability,

8

workmen's compensation limits Coverage A or Statutory Coverage B, $100,000.00 additional coverage all states (broad form) voluntary compensation, operation and contractual liability, $5,000,000 combined single limit or equivalent, and comprehensive auto liability, $500,000.00 combined single limit or equivalent. Not only will this insurance certificate cover obligations for normal seismic operations, but it will also provide for obligations and potential liabilities pertaining to Hazardous Wastes and Environmental Laws. Grantor, its directors, officers, employees, and representatives shall be named as insureds in any such liability policy. This coverage shall not be changed or canceled within sixty (60) days without prior written notice to Grantor. Grantor will be named as an additional insured under all policies. All insurance coverage shall be provided by a company with an A.M. Best rating of at least A- excellent. Grantee will require from all insurers a waiver of subrogation in favor of Grantor.

Section 7.     Forestry, farming, grazing, irrigation or drainage operations will not unreasonably be impaired or impeded. The crossing of machinery and equipment shall not damage said canals, ditches, or laterals. The sides and/or levees or portions thereof, of drainage ditches, irrigation canals, and laterals or any such, shall not be touched, walked on, driven or bored into, driven on, tampered with, mashed down, destroyed or injured. If damages do occur, all other work by Grantee on Grantor's property shall be stopped until such damage is repaired to Grantor's satisfaction.

Grantee assumes all restrictions and conditions of this agreement on all other land rented by Grantor, and all irrigation canals, irrigation ditches, irrigation laterals, drainage canals and ditches that Grantor has acquired in any manner on land other than its own. Grantee shall be responsible for all damages to Grantor's forestry, farming, grazing and irrigation operations and the crossing of machinery or equipment shall not damage any canals, ditches or laterals.

Section 8.     The said Grantor is to fully use and enjoy said premises except for the purposes herein granted to the said Grantee. Grantor retains the right of ingress and egress at all times, before, during and after operations. Grantee will not hold Grantor liable for work slow downs or stoppages caused by Grantor. Grantee or his contractors, in exercise of rights herein granted, shall not cut off or prevent normal ingress and egress by Grantor or tenants of Grantor, to farm and otherwise use the land for its customary purposes.

Section 9.     In addition to the foregoing cash consideration, Grantee agrees to pay for and/or repair all damages to crops, timber, pasture grass, fences, wells, drainage ditches, irrigation ditches, irrigation canals, or laterals, cattle or other livestock, or any other improvement or chattel, at Grantor's appraisals, resulting or which may result to Grantor and to its tenants, sharecroppers and lessees of said lands caused by the seismic operations. Grantee further agrees to pay for or repair all damages to wetlands (including loss of wetland functions or values) caused by its operations. In determining the damages owed or repairs necessary to address harms to wetlands or wetland functions or values, any mitigation for such harms required by the United States Army Corps of Engineers or any other regulatory body or agency, where such mitigation is not conducted on the Premises and in the immediate vicinity of the harms caused by Grantee, shall not be considered as satisfying the obligation to pay for damages or make repairs under this permit.

Section 10.     Grantee shall be responsible to Grantor, its directors, officers, employees, and representatives, or to Grantor's tenants for all damages at current market value caused by Grantee's seismic operations, including but not limited to damages to surface and subsurface of the land, timber, crops, pastures, domestic animals, roads, canals, ditches, artificial or natural drains, fences, buildings, water wells and improvements on said land. Grantee assumes all risk and liability of any kind and nature incident to, occasioned by, or resulting in any manner, directly or indirectly, from Grantee's seismic operations hereunder; and agrees to indemnify,

9

defend and hold harmless Grantor against any and all liens and claims of any kind for damages occasioned by, or on account of, said operations and against any and all claims for property damage, personal injury or death sustained by any person or persons whomsoever natural or corporate, in connection with, or resulting from Grantee's operations hereunder, and whether or not involving active or passive negligence on the part of Grantor or its agents, contractors or employees.

Section 11.   The expiration/termination of this permit shall not release Grantee from it obligations pursuant to all parts of Section 11 of this permit. This provision in no way limits the rights of Grantor for permit cancellation and/or damages under the provisions of applicable federal, state or local laws.

(a)   Grantee agrees, represents and warrants that it will fully comply with all requirements of Environmental Law, including, but not limited to, any requirements related to the status of any portion of the premises as wetlands subject to regulation under the Clean Water Act.

(b)   Grantee shall keep the Premises free of any lien imposed pursuant to any Environmental Law relating to the presence, release or remediation of Hazardous Materials on the premises or the presence, release or remediation of Hazardous Materials generated, transported, or disposed of by Grantee at any site.

(c)   Grantee shall promptly provide Grantor with copies of all orders, notices of violations, information requests, correspondence, communications, permit applications, permits, or agreements with any government authority or agency (federal, state, or local) or any private entity relating in any way to any Environmental Law or the presence, release, threatened release, placement on or in the Premises, or the generation, transportation, storage, treatment, or disposal at the Premises, of any Hazardous Material.

(d)   Upon written request by Grantor, as pertains to rights herein granted, Grantee shall perform appropriate tests that are required of Grantor by Government Agencies of air, water, and soil to demonstrate that Grantee complies with all Environment Laws relating in any way to the presence of Hazardous Materials on the Premises and shall provide the results of such tests to Grantor.

(e)   If the presence, release, threatened release, or placement on or in the Premises during the Term of this Permit, or the generation, transportation, storage, treatment, or disposal at the Premises during the Term of this Permit, of any Hazardous Material (1) gives rise to a claim (including, but not limited to, a claim for response action, remedial action, or removal action) under any Environmental Law or any common law theory based on nuisance or strict liability, or (2) causes or threatens to adversely effect public health or the environment, Grantee shall promptly take any and all remedial, removal, or response action necessary to clean up the Premises and any contaminated soil, surface water, or groundwater and to mitigate exposure to liability arising from the Hazardous Material, whether or not required by law.

(f)   Grantee hereby releases and discharges Grantor, its stockholders, royalty owners, directors, officers, employees, agents, attorneys, and assigns (hereinafter "Indemnitees") from any and all suits, claims, demands, causes of action, damages, consequential damages, losses, costs, and expenses of any kind, whether known or unknown, which Grantee had, has, or at anytime may have based on: (1) any Environment Law, including any cost-recovery claim under the Comprehensive Environment Response, Compensation and Liability Act of 1980, 42 U.S.C. 9601 et seq., as amended, or comparable state law; (2) any discharge, disposal, release, threatened release, or escape of any Hazardous Material or any chemical, product, by-product, waste, hazardous waste, hazardous substance, or any material whatsoever, on, at, to, or from the

10

Premises (including all facilities, improvements, structures, and equipment thereon, surface water thereon or adjacent thereto, and soil or groundwater thereunder); and (3) any environmental conditions whatsoever on, under, or in the vicinity of the Premises.

(g)  Grantee shall indemnify, hold harmless, and defend Indemnitees from and against any and all suits, claims, demands, causes of action, damages, consequential damages, losses, costs, and expenses of any kind (including, without limitation, fines, penalties, or costs of investigation, response actions, remedial actions or removal actions), whether known or unknown, based on: (1) any Environmental Law or regulation, including any cost recovery claim under the Comprehensive Environmental Response, Compensation and Liability Act of 1980 ("CERCLA"), 42 U.S.C. 9601 et seq., or comparable state law, arising from or in connection with the release or threatened release of hazardous substances on, at, to, or from the premises; (2) any discharge, disposal, release, threatened release, or escape at any time of any hazardous material or any chemical, product, by-product, waste, hazardous waste, hazardous substance, or any material whatsoever on, at, to, or from the premises (including all facilities, improvements, structures, and equipment thereon, surface water thereon or adjacent thereto, and soil or groundwater thereunder); and (3) any conditions whatsoever on, under, or in the vicinity of the Premises.

(h)  Except to the extent otherwise provided by applicable Environmental Laws or this permit, Grantee shall comply in all respects with the waste management practices set forth in Sections 4 and 5 of "API Environmental Guidance Document, Onshore Solid Waste Management in Exploration and Production Operations (1st ed.  January 15, 1989)".

(i)  In the event that Grantee breaches any of its obligations in Section 11, Grantor may: (A) require Grantee to provide environmental remediation pursuant to Section 11 of this Permit or (B) declare a forfeiture, or take steps to collect on, any financial responsibility instrument provided pursuant to Section 11 of this Permit, and use the funds available from such instrument to perform environmental remediation of the premises.  Not withstanding any provision to the contrary contained herein, Grantee's obligations pursuant to all of Section 11 of this permit, Section 11 shall survive termination of this permit.  Grantor's remedies provided by this paragraph shall be cumulative, and Grantor shall have any other remedies provided by this permit or applicable law.

Section 12.   Following completion of each seismic operation hereunder, Grantee shall promptly remove from the lands permitted herein, all solids and liquids even though tested and approved by appropriate State agency and restore the surface of the land as nearly as possible to its former condition.  Grantee agrees that it shall pick up and dispose of, off Grantor's lands, whether covered by this permit or not, all broken boards, pieces of wire cable, grease buckets, pieces of plastic sheeting, pipe fittings, paper and other debris, and shall not cover same with dirt so that it appears that location is clean when it is not.

Section 13.   Grantee shall not dispose of any material especially Hazardous Materials whatsoever on the premises.  All wastes removed from the premises shall be disposed of by Grantee at Grantee's expense in compliance with all Environmental Laws.

Section 14.   Grantee shall promptly pay to Grantor damages at current market value caused by Grantee's seismic operations of the permitted premises and to any other lands and appurtenances of Grantor and expenses incurred by Grantor for wages, payroll taxes and expense of Grantor's representatives while determining and directing the disposal of debris on or from Grantor's lands.

11

Section 15.   If Grantee fails to fulfill this obligation, (Sections 10, 11 above) after demand has been made to do so, Grantor may have the necessary work done to accomplish this at Grantee's cost, even if this permit has otherwise terminated.

Section 16.   Grantee shall have the right to conduct 3-D seismic operations across the permitted property during the term of this permit.   As to any seismic surveys conducted by Grantee, the parties agree as follows:

No operations will conducted within 500 feet of any structure.  Exceptions may be made if Vibra-Tech or a similar company determines by study to Grantor's and Grantee's satisfaction that no damage will occur with charges of lesser size.   Upon completion of the final data processing phase of the 3-D Seismic Survey on Grantor's lands and within one sixty (60) days thereafter, Grantee agrees to furnish to Grantor a copy of the geophysical survey and all related data across and within one mile of each separate piece of the permitted property (the Lands). Information to be furnished shall include but not be limited to copies of all seismic and geophysical data acquired on the Lands.

Furthermore, Grantor shall receive 8-mm magnetic data tape copies, in a format designated by Grantor, of all final processed and migrated full data volume over the Lands to the extent that 3-D seismic data was acquired by Grantee.   The final processed and migrated tapes shall be provided to Grantor in the following format:

- The most standard industry format at the time it is sent, and SEGY format if this is not the standard.
- In SEGY format, byte positions of the line and trace numbers (found in the SEGY trace header) are required.

A description of survey corners, in the form of (a) line number, (b) trace number, and (c) X&Y coordinates is required, and any other supported data needed to load the 3-D seismic data onto a 3-D seismic workstation.  To be included with any final processed and migrated tapes are:

- A description of acquisition and processing parameters.
- A 3-D seismic base map indicating the perimeter of the entire seismic shoot with Grantor's Lands denoted within perimeter, noting locations of seismic lines, seismic line numbers, trace numbers, and X&Y coordinate grid.
- Seismic observer's report.
- Velocity control across the Lands or within the overall 3-D, if not present on the Lands.
- All other data necessary for the data to be reprocessed.

If Grantee does a different processing or reprocesses any or all of the data within one (1) year of the initial processing, Grantor shall have the right to receive the final processed or reprocessed full data volume on the Lands.   Grantee shall notify Grantor within thirty (30) days of reprocessing.

In addition, Grantor retains the right to receive unprocessed field tape copies and associated documentation over the Lands to the extent that 3-D seismic data was acquired by Grantee on the Lands.  Grantor's rights to use the data shall be restricted except as provided hereinbelow. Furthermore, Grantor shall not sell or trade the data.

Grantee shall use its best efforts to treat as confidential and secret the data and all copies, analyses, reprocessings, and reformatting thereof in all forms and media.

Grantor agrees and acknowledges that:  a) Grantor's rights in and to the data are expressly

limited by the terms of this Agreement; and b) Grantor may not sell, assign, copy, transfer, display, exhibit or in any way reveal the data, except as authorized by and in compliance with the provisions of this Agreement.

Access to the data shall be limited to Grantor's employees. Grantor may make copies of the data and its adaptations for its own internal use only. Grantor agrees that all data, and copies thereof, shall not be made available to other parties, except under the following conditions:

(a) Said data may be made available to Consultant(s) retained by Grantor for the purpose of performing an interpretation, reprocessing, or reformatting for Grantor provided that Consultant(s) executes and delivers to Grantor a written agreement, to be provided to Grantee upon request, whereby Consultant(s) agrees (i) to maintain the data in the strictest confidence and not to disclose the data or the adaptations, reprocessings, or reformattings derived therefrom to any other person and not use it for any purpose other than its work for Grantor, and (ii) that the data shall not be removed from the Consultant(s) premises or be shown or transmitted to any person in any form or via electronic transmission from any location. Each Consultant(s) must be clearly recognized as a *bona fide* consultant, or as a *bona fide* geophysical processor, within the oil and gas industry.

(b) Grantor shall not sell, convey, deliver, trade, exchange, transfer, or otherwise share the data, manually or electronically, with any entity or individual without the express prior written approval of Grantee. If Grantor proposes to join with others in a farmout, exploration program, or other development program within the area covered by the data, Grantor may show the data to said parties, but data may not manually, electronically, or by means of computer modem(s), leave Grantor's offices. Grantor may only show representative lines of data; Grantor shall not give tapes or disks of the data to any prospective partner or allow any prospective partner or allow any prospective partner to work said data on a 3-D workstation. Disclosures of data shall be for a limited period of time, in a secure environment, whereby the parties to whom data is disclosed shall not leave Grantor's premises with either copies of the data or a knowledge of the data equivalent to having a coy of the data. The parties to whom the data is disclosed shall not make any regional interpretations or maps from the data; disclosures of data shall be strictly limited to the area subject to negotiations.

Section 17.  Grantee, its contractors, subcontractors, party managers, inspectors, agents, and employees will not cause or set a fire, or cause to have a fire set or started upon these said lands or any other land of Grantor's. If a fire is observed on or near Grantor's land, a responsible member of Grantee's crew will immediately notify the Office of Forestry, Louisiana Department of Natural Resources, and Fire Tower, phone (337) 463-7801, Calcasieu Parish, AND Laine Fontenot, Bennett & Peters, telephone (337) 738-3304.

Section 18.  This permit is made without warranty of title, and conveys no fee title or mineral interest, all such being specifically reserved to Grantor and/or assigns. Grantee shall leave with Grantor a local telephone number and address during entire period of operations whereby Grantor may contact Grantee on any problems. Neither Grantee nor its agents, employees, or contractor personnel shall bring any firearms or fishing equipment onto the property of Grantor, nor will they do any fishing or hunting of ducks, geese, doves, quail, squirrels, deer, turkeys, or any such wildlife or game thereon during the life of this permit or any other time without the proper lease or permit. Also, three- or four-wheeler vehicles, or any other type of recreational vehicles or boats, are prohibited on this property for personal enjoyment, hunting, fishing, or any other recreational sports.

13

Section 19.   It is mutually understood and agreed that this permit as written, covers all of the agreements and stipulations between the parties and no representations or statements, verbal or written, have been made modifying, adding to or changing the terms hereof, and by conducting operations, Grantee accepts this permit and all of the terms and conditions hereof, the same as if it had been signed by authority and under special resolution of its Board of Directors.

Section 20.   Grantee hereby accepts responsibility for, and guarantees that, all involved employees, contractors, subcontractors, managers, inspectors and agents are aware of the details of this agreement and are bound to abide by all its terms, especially those stated in Sections 10 and 11.

Section 21.   In addition to any damages to Grantor which may be proved, Grantee shall pay a penalty of five hundred dollars ($500.00) per day for each breach of the terms of this permit.  Grantee shall cease all operations until the said breach is corrected and all damages and penalty are paid, and Grantor shall be held harmless for any losses to Grantee as the result of such stoppage of seismic operations.

Section 22.   Left Blank Intentionally

Section 23.  Grantee will have each unit of the crew (the crew consisting, as a minimum, of a survey unit, drilling unit, party manager, detonation unit, inspection unit and clean-up unit) during all operations on the above-described land as provided herein, to have available and in their possession, a copy of this Permit for inspection by Grantor's representatives.

Section 24.   In the event during the period commencing January 1, 2002, and terminating on the date this Permit terminates, Grantee, from time to time, directly or indirectly, through any person , firm or entity acquires any geophysical permit to conduct seismographic operations, by any means, effecting land within ten (10) miles from any boundary of the Subject Lands for any consideration in excess of that paid for this Permit, then within thirty (30) days thereafter, without the necessity of demand by the Grantor, the Grantee shall pay to the Grantor such additional sum of money as is necessary to equal such payments to third parties.  This Section 24. shall not apply to tracts of land equal to or less than forty (40) acres.

Section 25.   All provisions hereof shall extend to and bind the successors and assigns of Grantor and shall also extend to and bind the partners, successors and assigns of Grantee.

In the event that Grantee herein is composed of more than one person or one party, it is understood and agreed that all obligations due by Grantee to Grantor hereunder, are incurred by the persons or parties comprising the Grantee jointly, severally and in solido.  Such liability shall pertain to Grantee, assigns, partners and transferees of this permit.

If Grantor brings suit to compel performances of, or to recover for breach of any express covenant herein contained, or of any covenant implied, or for declaratory relief, or for injunctive relief, and prevails therein, Grantee agrees to pay to Grantor reasonable attorney's fees in addition to the amount of judgment and costs.

Section 26.   In the consideration and interpretation of this agreement, the following shall apply:

(a) This agreement was prepared jointly by the parties hereto and not by either party to the exclusion of the other.

(b) Failure to exercise any right or rights hereunder shall not be considered a waiver of such right or rights in the future.

14

Exhibit "A"

Case 6:06-cv-00800-ACBH-MEM Document 75-3 Filed 08/06/07 Page 23 of 27 PageID #: 700
by and between Excalibur Land Company, Inc., et al, as Grantor, and Mayne & Mertz, Inc. as Grantee.

(c) Time is of the essence with regard to all obligations to be performed on or by a specified date, if any, herein contained.

WITNESS the signature of Grantor at Lake Charles, Louisiana on the 5ᵗʰ day of August, 2002.

Witnesses:

EXCALIBUR LAND COMPANY, INC.
(Grantor)

By:

WITNESS the signature of Grantor at Lake Charles, Louisiana on the 5ᵗʰ day of August, 2002.

Witnesses:

FARMERS RICE MILLING COMPANY, INC.
(Grantor)

By:

WITNESS the signature of Grantor at Lake Charles, Louisiana on the 5ᵗʰ day of August, 2002.

Witnesses:

AGRILECTRIC RESEARCH COMPANY
(Grantor)

By:

WITNESS the signature of Grantor at Lake Charles, Louisiana on the 5ᵗʰ day of August, 2002:

Witnesses:

NANETTE NOLAND
(Grantor)

By:

WITNESS the signature of Grantee at Lake Charles, Louisiana on the 5ᵗʰ day of August, 2002.

Witnesses:

MAYNE & MERTZ, INC.
(Grantee)

By: _Dennis F Sharp_

Dennis F. Sharp, Attorney-in-Fact

16

# Calcasieu Parish Recording Page

**H. Lynn Jones II**
**Clerk of Court**
P.O. Box 1030
Lake Charles, LA  70602
(337) 437-3550

**Received From :**
   DOUGLAS KEITH - 237-6039

**First VENDOR**
QUEST EXPLORATION, L.L.C.

**First VENDEE**
EXCALIBUR LAND COMPANY INC.

**Index Type :**   Conveyances                          **File Number :** 2822218

**Type of Document :** Release Lease

                                                        **Book :** 3366      **Page :** 640

**Recording Pages :**          2

## Recorded Information

I hereby certify that the attached document was filed for registry and recorded in the Clerk of Court's office for Calcasieu Parish, Louisiana

On (Recorded Date) : 07/17/2007

At (Recorded Time) :  2:44:26PM

Doc ID - 017210780002

CLERK OF COURT
H. LYNN JONES II
Parish of Calcasieu
I certify that this is a true copy of the attached
document that was filed for registry and
Recorded 07/17/2007 at 2:44:26
File Number    2822218
Recorded in Book  3366   Page 640

Deputy Clerk

**Return To :**
   DOUGLAS KEITH - 237-6039
   LAKE CHARLES, LA  70602

Do not Detach this Recording Page from Original Document



**STATE OF LOUISIANA**
**PARISH OF CALCASIEU**

## RELEASE OF OIL, GAS AND MINERAL LEASE

**KNOW ALL MEN BY THESE PRESENTS, THAT:**

**WHEREAS, QUEST EXPLORATION, L.L.C.**, a Louisiana limited liability company, whose current mailing address is 124 Heymann Blvd., Suite 103, Lafayette, Louisiana 70503, (hereinafter referred to as "Lessee") is the record owner that certain Oil, Gas and Mineral Lease dated January 9, 2006, between EXCALIBUR LAND COMPANY INC., (hereinafter referred to as "Lessor") and QUEST EXPLORATION, L.L.C., as Lessee, referenced by that certain Memorandum of Oil, Gas and Mineral Lease dated January 9, 2006, recorded January 24, 2006 at COB 3224, Page 361, File No. 2746438 of the conveyance records of Calcasieu Parish, Louisiana (hereinafter referred to as the "Subject Lease")

**WHEREAS,** the Subject Lease is no longer in force and effect as to any part or portion of the lands and/or interest covered thereby, the same having expired by its own terms.

**NOW THEREFORE,** Lessee represented by its duly authorized representative its duly authorized representative does hereby release, remise, and relinquish all of its right, title and interest in and to the Subject Lease.

**IN WITNESS WHEREOF**, this instrument is executed and effective as of this the 2nd day of March, 2007, in the presence of the undersigned competent witnesses and the undersigned Notary Public.

**WITNESSES:**                                          **QUEST EXPLORATION, L.L.C.**

_Linda L Couvillon_                                    _E. D. Davis_
                                                        E.D. Davis, Jr.

(Printed) _Linda T. Couvillon_

_Raphas S Keith_

(Printed) _Douglas B. Keith_

**STATE OF LOUISIANA**
**COUNTY OF LAFAYETTE**

BE IT KNOWN, that on this the 2nd day of March, 2007, before me the undersigned Notary in and for the State of Louisiana, did personally came and appeared E.D. Davis, Jr., to me personally know, who declared that he is a Member of Quest Exploration, L.L.C. and that he executed the foregoing instrument as the free act and deed of said limited liability company.

Given under my hand and seal this the 2nd day of March, 2007.

_Ghuckabay_
Notary Public/State of Louisiana
Printed Name: _____
Notary Identification No. _____
My Commission Expires: ___ _LIFE_ ___

Gretchen Huckabay
Notary No. 13946

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | | |
|---|---|---|
| MAYNE & MERTZ, INC. | * | CIVIL ACTION NO. CV06-0800 |
| VERSUS | * | JUDGE MELANCON |
| QUEST EXPLORATION, LLC. AND EXCALIBUR LAND COMPANY, INC. | * | MAGISTRATE JUDGE METHVIN |

*************************************************************************

### AFFIDAVIT OF DOUGLAS BLOUNT KEITH

BEFORE ME, the undersigned authority, a Notary Public, duly commissioned and qualified, personally came and appeared:

> DOUGLAS BLOUNT KEITH, an individual of the full age of majority and competent to attest to the following facts, domiciled in Fairfield Connecticut, and whose present mailing address is 72 Wellesley Drive, New Canaan, Connecticut 06840. (hereinafter referred to as "Affiant")

who after being duly sworn, did depose and state the following:

1.  By virtue of Affiant's personal participation as a witness in the act described herein, and by virtue of Affiant's position as an agent of Quest Exploration, L.L.C. ("Quest"), Affiant is competent to testify to the facts recited herein and knows such facts of Affiant's own personal knowledge.

2.  By instrument dated and effective March 2, 2007, E.D. Davis, Jr. executed on behalf of Quest, an instrument entitled "Release of Oil, Gas and Mineral Lease", whereby Quest released all of its right, title and interest in the January 9, 2006 Oil, Gas and Mineral Lease between Quest and Excalibur Land Company, Inc. ("Excalibur"), which instrument is registered in Book 3366, Page 640 of the Calcasieu Parish Public Records, Entry No. 282218.

3.  Pursuant to an injunctive agreement between Quest and Mayne & Mertz, Inc. ("Mayne"), Quest has returned to Excalibur all copies in its possession of the seismic data at issue in suit entitled *Mayne & Mertz, Inc. v. Quest Exploration, L.L.C., et al.,* No. 06-CV-0800, pending in the United States District Court for the Western District of Louisiana. Pursuant to the same injunctive agreement, Quest has promised to make no use of the subject seismic data, or any information derived therefrom. Quest has also promised to maintain the confidentiality and secrecy of the subject seismic data.

4.  Quest has no objection to the entry of an injunction permanently extending the restrictions, contained in the above-referenced injunctive agreement between Quest and Mayne, on the use and disclosure of the subject seismic data.

WITNESSES:                                      AFFIANT:

_____                         _____
Name:                                           DOUGLAS BLOUNT KEITH

_____
Name:

Page 1 of 2



DEFENDANT'S EXHIBIT 4

SWORN to and subscribed before me, this _6th_ day of _August_____, 2007.


_Matthew A. Lynch_____
NOTARY PUBLIC

Notary Name: _MATTHEW A. LYNCH_
Notary No.: _29960_